UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DANNY TYLER COMBS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MS. ELIS, WARDEN REAGLE, and DEPT. WARDEN )<br>BRYANT, )<br>)<br>Defendants. ) | No. 1:23-cv-01759-JMS-TAB |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

*Pro se* Plaintiff Danny Tyler Combs is incarcerated at Pendleton Correctional Facility ("PCF") and alleges that Defendants Warden Dennis Reagle, Deputy Warden Maggie Bryant, and Correctional Officer Naveah Elis violated his constitutional rights by not addressing the extreme heat in Mr. Comb's cell house and by not providing proper medical care after Mr. Combs fell and hit his head due to the extreme heat. Mr. Combs asserts an Eighth Amendment conditions-of-confinement claim against Warden Reagle and Deputy Warden Bryant and an Eighth Amendment medical deliberate indifference claim against Officer Elis.[1] [*See* Filing No. 11.] Defendants have filed a Motion for Summary Judgment, [Filing No. 39], which is now ripe for the Court's consideration.

**I.
STANDARD OF REVIEW**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment,

---

[1] The Court screened Mr. Combs' Complaint pursuant to 28 U.S.C. § 1915A. [Filing No. 11.]

1

the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez,* 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017) (cleaned up). Moreover, "where a reliable videotape clearly captures an event in dispute and blatantly contradicts one party's version of the event so that no reasonable jury could credit that party's story, a court should not adopt that party's version of the facts for the purpose of ruling on a motion for summary judgment." *McCottrell v. White*, 933 F.3d 651, 661 n.9 (7th Cir. 2019) (citing *Scott v. Harris*, 550 U.S. 372, 380-81 (2007)).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
### FACTUAL BACKGROUND

The facts stated below are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA,*

2

*Inc. v. Am. Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005). In other words, because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Combs, including giving him the benefit of conflicting evidence, and draws all reasonable inferences in his favor. *Ziccarelli v. Dart*, 35 F.4th 1079, 1083 (7th Cir. 2022); *Khungar*, 985 F.3d at 572-73.

### A.  Mr. Combs Passes Out Due to Extreme Heat

Mr. Combs claims that his cell in G cell house was too hot for the entire month of August 2023. [Filing No. 40-1 at 30.] Deputy Warden Bryant had distributed ice to inmates during that time. [Filing No. 40-1 at 29.] Before August 10, 2023, Mr. Combs had not informed Warden Reagle or Deputy Warden Bryant about the heat in his cell. [Filing No. 40-2 at 10-11.]

Around lunchtime on August 10, 2023, Mr. Combs complained to Officer Elis that he felt dizzy and she told him there was nothing wrong with him. [Filing No. 40-1 at 17-18; Filing No. 40-1 at 21.] However, staff contacted medical at 3:40 p.m. [Filing No. 40-3 at 7.] Mr. Combs then passed out around 4:00 p.m. [Filing No. 40-1 at 18.] He had never passed out before. [Filing No. 40-1 at 17-18.]

### B.  Mr. Combs Requests Medical Care

Officer Elis came back to the range where Mr. Combs' cell was at 5:19 p.m. on August 10, 2023, saw that he had hurt his head, and said she would get medical attention but never did so. [Filing No. 40-1 at 18-19; Filing No. 40-1 at 34.] At 6:27 p.m., a Correctional Officer walked through the range and Mr. Combs told her that he had fallen and "busted [his] head open" and that Officer Elis was "supposed to get [him] medical attention and she didn't, she just left [him], and [the Correctional Officer] said she would get ahold of medical for [him]." [Filing No. 40-1 at 22.]

A medical staff member arrived at 8:48 p.m. on August 10, 2023, said that she did not know that Mr. Combs has passed out, and took him to the medical office at 9:40 p.m. where she cleaned and bandaged his head and gave him pain medicine for headaches. [Filing No. 40-1 at 23.] Mr. Combs did not require stitches and only needed a bandage for his forehead. [Filing No. 40-1 at 23.] Mr. Combs had headaches after the incident, and medical staff "really did nothing" for his headaches. [Filing No. 40-1 at 31.]

    **C.    Mr. Combs Complains About the Heat**

On August 11, 2023, the day after he passed out, Mr. Combs sent Warden Reagle and Deputy Warden Bryant a "blue request slip" notifying them of the heat in his cell and explaining that he had passed out. [Filing No. 40-2 at 10-11.] He never received a response. [Filing No. 40-2 at 10-11.] The same day, he submitted Grievance # 23-159295 in which he stated:

> At [PCF] in GCH 18-5D at 4:00 pm 8-10-23 I fell in my cell and split my forehead open. I called for a CO & put a flag out my door to signal help. C.O. Miss Elis didn't make it on the range until 5:19 pm an hour later. I told her what happen[ed] [and] showed her my for[e]head [and] she said she would get me medical. She ignored my need for medical[,] didn't file a incident report[,] didn't notify medical, didn't wanna do paperwork, or ensure my safety & security. At 6:27 pm Miss Amos walked 5D. I told her what happen[ed]. I fell and that Miss Elis on day shift never got me medical. She looked at my for[e]head [and] said she would let Sgt. Saxson know. At 7:22 pm she came back on the range and said medical was coming. At 8:48 nurse came and looked at my for[e]head. I told her what happen[ed]. She said day shift never notified her and that they were supposed to file incident report. She said she would treat me. At 9:40 pm she got me pulled out to the nurse's station and she dressed my wound cleaned & bandaged it and gave me medication to stop the pain & headac[h]e. And walk thrus have not been followed as policy says. They have not checked on me frequently as [they] should.

[Filing No. 40-3 at 8.]

The Grievance Specialist responded to Grievance # 23-159295 on September 18, 2023, stating:

> A review of the camera indicates staff were regularly on the range conducting checks and passing out food. Appears staff contacted medical at 3:40 pm. Night

4

> shift followed up at 6:20 pm.  Medical checked at 8:31 pm and sent for treatment at 9:24 pm.  This incident will be forwarded for review due to time taken.  Based on the above information there is no other relief I can offer.

[Filing No. 40-3 at 9.]

On September 19, 2023, Mr. Combs submitted a Grievance Appeal as to Grievance # 23-159295 in which he stated:

> I know for a fact that medical was not contacted at 3:40.  And that they were not on the range regularly [which] is every 30 min checking on everybody.  I know because it wasn't till about 4:00 pm when I had fell.  And I was yelling for help for over an hour.  She Miss Elis didn't come until 5:19 pm.  And 5:19 pm is when I told her what happen[ed].  Falling [unconscious] due [to] the heat.  Her seeing clearly that I needed medical.  The blood and swelling 9:40 pm was an unreasonable response time for medical to treat me when staff was notified at 5:10 pm.  Night shift was nowhere.  I had fell and didn't know until I alerted them about it.

[Filing No. 40-3 at 6 (emphasis omitted).]

The Warden or Designee responded to Mr. Combs' appeal of the denial of Grievance # 23-159295 on October 23, 2023, stating: "Medical responds to needs based on the severity of the need and the completion of a HCR.  Medical does not have to respond immediately unless called for by staff as a signal 3000."  [Filing No. 40-3 at 3.]  On October 25, 2023, Mr. Combs filed another appeal in which he stated: "I appeal the decision of the Warden.  I should have gotten medical help as soon as it happen[ed]."  [Filing No. 40-3 at 2.]

### D. The Lawsuit

Mr. Combs initiated this litigation on September 29, 2023.  [Filing No. 1.]  The Court screened his Complaint and found that an Eighth Amendment conditions-of-confinement claim could proceed against Warden Reagle and Deputy Warden Bryant, and an Eighth Amendment medical deliberate indifference claim could proceed against Officer Elis.  [Filing No. 11.]  Defendants have filed a Motion for Summary Judgment as to all of Mr. Combs' claims.  [Filing No. 39.]

5

## III.
### DISCUSSION

### A. Eighth Amendment Conditions-of-Confinement Claim

In support of their Motion for Summary Judgment, Defendants argue that Mr. Combs has not shown that the heat in his cell created a substantial risk of serious harm to his health or that Warden Reagle and Deputy Warden Bryant acted with deliberate indifference to his health. [Filing No. 41 at 8.] They contend that although Mr. Combs states that his cell was too hot for the entire month of August, he only passed out once – on August 10, 2023 – and "he does not describe conditions where there was a risk of serious harm to his health for an entire month." [Filing No. 41 at 8.] Defendants note that Mr. Combs "was never treated for heat related injuries nor did he complain of heat related injuries," and that he "did not get treated for heat stroke or need his body temperature to be brought down from overheating." [Filing No. 41 at 8.] They argue further that Mr. Combs has not shown that either Warden Reagle or Deputy Warden Bryant knew of the heat in his cell before he passed out, that he describes writing to them the day after he passed out, and that Deputy Warden Bryant passed out ice the day before the incident which shows she did not act with deliberate indifference. [Filing No. 41 at 8.]

In his response, Mr. Combs argues that Warden Reagle and Deputy Warden Bryant would have known about the excessive heat in cells due to their positions, and that they could have passed out more ice on the day that he passed out. [Filing No. 43 at 5.]

In their reply, Defendants note that Mr. Combs does not cite to any evidence to support his argument that Warden Reagle and Deputy Warden Bryant would necessarily have known about the excessive heat and that they "cannot be liable by simply being the Warden or Deputy Warden of a facility." [Filing No. 45 at 2-3.]

6

"A public official is entitled to qualified immunity from suit unless he [or she] violated a clearly established constitutional right." *Dockery v. Blackburn*, 911 F.3d 458, 466 (7th Cir. 2018) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Whether qualified immunity applies involves two questions, which may be addressed in either order: "(1) whether the facts alleged…by the plaintiff establish a violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct." *Dockery*, 911 F.3d at 466. The Court first considers whether Warden Reagle and Deputy Warden Bryant violated Mr. Combs' Eighth Amendment right by housing him in a cell that was too hot, before turning, if necessary, to whether that right was clearly established.

The Eighth Amendment's proscription against cruel and unusual punishment protects prisoners from the "unnecessary and wanton infliction of pain" by the state. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quotations and citation omitted). Pursuant to the Eighth Amendment, prison officials have the duty to provide humane conditions of confinement and "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation and citation omitted).

To succeed on a conditions-of-confinement claim under the Eighth Amendment, a plaintiff must demonstrate that: (1) he was incarcerated under conditions that posed a substantial risk of objectively serious harm; and (2) the defendants were deliberately indifferent to that risk, meaning they were aware of it but ignored it or failed "to take reasonable measures to abate it." *Townsend v. Cooper*, 759 F.3d 678, 687 (7th Cir. 2014); *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citing cases).

The objective showing requires "that the conditions are sufficiently serious – *i.e.*, that they deny the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety." *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019) (quotation and citation omitted). "According to the Supreme Court,…'extreme deprivations are required to make out a conditions-of-confinement claim.'" *Id.* (quoting *Hudson*, 503 U.S. at 9). "If under contemporary standards the conditions cannot be said to be cruel and unusual, then they are not unconstitutional, and to the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Giles*, 914 F.3d at 1051 (quotation, citation, and alteration omitted).

After showing the objective component, a plaintiff must next establish "a subjective showing of a defendant's culpable state of mind," and "the state of mind necessary to establish liability is deliberate indifference to the inmate's health or safety." *Id.* (quotation omitted). In addition, negligence or even gross negligence is not sufficient to support a conditions-of-confinement claim. *See Huber v. Anderson*, 909 F.3d 201, 208 (7th Cir. 2018).

Prison officials may, in certain circumstances, be found to be deliberately indifferent with respect to extreme heat in a prison. *See Phillips v. Reagal*, 2023 WL 5627993, *5, 8-9 (S.D. Ind. Aug. 31, 2023) ("Subjecting a prisoner to extreme temperatures may violate the Eighth Amendment.") (citing *Dixon v. Godinez*, 114 F.3d 640, 643-44 (7th Cir. 1994)). If persons who are able to take steps to remediate a known problem with extreme heat fail to adequately do so, they may be found to be deliberately indifferent to a prisoner's welfare. *See Phillips*, 2023 WL 5627993, at *9 (denying summary judgment to prison officials who claimed they adequately addressed extreme heat in cell block through additional fans in the block, regular temperature

checks of prisoners, and provision of some additional ice to prisoners, where there was evidence more could have been done).

The Court assumes without deciding that Mr. Combs has presented sufficient evidence from which a jury could conclude that the hot cell was a condition that posed an objective risk of substantially serious harm, and turns to whether he has presented sufficient evidence that Warden Reagle and Deputy Warden Bryant were aware of the risk but ignored it or failed to take reasonable measures to abate it. As to Warden Reagle, Mr. Combs does not provide any evidence that he knew about the heat in his cell before Mr. Combs passed out on August 10, 2023. Indeed, Mr. Combs did not file a grievance until the day after he had passed out. [*See* Filing No. 40-3 at 8.] Mr. Combs argues that "with [Warden] Reagle being warden at the time…[he] would have full [knowledge] of the conditions of the cell house." [Filing No. 43 at 5.] But "[i]t is well established that there is no respondeat superior liability under § 1983," *Gayton v. McCoy*, 593 F.3d 610, 622 (7th Cir. 2010), so Mr. Combs' reliance on the fact that Warden Reagle is the Warden at PCF so must have known about the heat in his cell is not enough to show that he was aware of a condition that posed an objective risk of substantially serious harm. Mr. Combs has not presented evidence from which a jury could conclude that Warden Reagle violated Mr. Combs' Eighth Amendment rights, so he is entitled to qualified immunity. The Court **GRANTS** Defendants' Motion for Summary Judgment, [Filing No. 39], as to Mr. Combs' Eighth Amendment conditions-of-confinement claim against Warden Reagle.

As to Deputy Warden Bryant, Mr. Combs has presented evidence that she passed out ice at some point during August 2023 when his cell was hot. He argues that this shows that Deputy Warden Bryant was aware that the cell was too hot, but Defendants argue that this shows that she was not deliberately indifferent to the heat. Either way, evidence that Deputy Warden Bryant

9

passed out ice is not sufficient to show that she acted with deliberate indifference. Mr. Combs testified that he did not complain about the heat in his cell until he submitted a "blue request slip" the day after he passed out. He has not presented any evidence that Deputy Warden Bryant knew that he was having trouble dealing with the heat, and her act of distributing ice is not sufficient. And knowledge that the cell was too hot cannot be imputed to Deputy Warden Bryant solely by reason of her position at PCF. *Gayton*, 593 F.3d at 622. No reasonable jury could conclude that Deputy Warden Bryant violated Mr. Combs' Eighth Amendment rights so she is entitled to qualified immunity and the Court **GRANTS** Defendants' Motion for Summary Judgment as to Mr. Combs' Eighth Amendment conditions-of-confinement claim against Deputy Warden Bryant.

  **B.**  **Eighth Amendment Medical Deliberate Indifference Claim**

  In support of their Motion for Summary Judgment, Defendants argue that Mr. Combs cannot show that his head injury was sufficiently serious because medical personnel found that his injuries only needed a bandage. [Filing No. 41 at 11.] They note that medical staff checked on Mr. Combs during the evening on the day that he passed out and sent for treatment, and that Mr. Combs admitted he did not require stitches and only needed a bandage. [Filing No. 41 at 11.] As to Officer Elis, Defendants argue that "staff contacted medical at 3:40 pm after [Officer Elis] was informed that [Mr. Combs] was alleging…he had passed out," so Mr. Combs "cannot say that [Officer Elis] was deliberately indifferent to a serious medical need." [Filing No. 41 at 12.]

  In his response, Mr. Combs argues that "documentation says medical was called at 3:40 pm and that night shift followed up at 6:20 pm and that [he] was seen at 9:24 pm," notes that Officer Elis "wasn't [aware] of [his] injury [until] 5:19 pm," and asserts that Officer Elis did not "conduct[ ] proper range checks" and did not get him proper medical attention. [Filing No. 43 at 3.] He argues that Officer Elis "witnessed [him] bleeding and [his] head swollen," that his

10

neighbors were "yelling for help," that she asked him what happened and said she would contact medical staff, but that "instead she left [and] went home." [Filing No. 43 at 6.] Mr. Combs asserts that his head injury was sufficiently serious, that the day shift never told the evening shift that he had passed out, and that "no incident reports or any evidence [show] that medical was contacted at 3:40 pm [which] can't be possible because [Officer Elis] didn't see [his] head swollen and blood on [him] until 5:19 pm when she came back to [his] cell." [Filing No. 43 at 6.] Mr. Combs notes that Officer Elis responded to most of his interrogatories by stating that she did not remember. [Filing No. 43 at 7.]

In their reply, Defendants reiterate their arguments that Mr. Combs' head injury was not a serious medical need because he did not require stitches and that Officer Elis was not deliberately indifferent because staff contacted medical at 3:40 p.m., the night shift followed up at 6:20 p.m., medical staff checked Mr. Combs at 8:31 p.m., and they sent for treatment at 9:24 p.m. [Filing No. 45 at 4.]

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

11

The Court first considers whether Mr. Combs' head injury was objectively serious. It is undisputed that his injury only required a bandage, and not stitches, and the Court finds that it was not objectively serious. See Pinkston v. Madry, 440 F.3d 879, 891 (7th Cir. 2006) (split lip and swollen cheek "do not rise to the level of an objectively serious medical need"); Wynn v. Southward, 251 F.3d 588, 593 (7th Cir. 2001) (in order to be objectively serious, injuries must be "so obvious that even a lay person would easily recognize the necessity for a doctor's attention"); Davis v. Jones, 936 F.2d 971, 972-73 (7th Cir. 1991) (one-inch laceration on detainee's temple that was not deep or long enough to require stitches was not objectively serious enough to require prompt medical attention under the Eighth Amendment).

In any event, the Court goes on to consider whether, even if Mr. Combs' head injury were objectively serious, a reasonable jury could conclude that Officer Elis acted with deliberate indifference – that is, that she "consciously disregarded a serious risk to [Mr. Combs'] health." Dean v. Wexford Health Sources, Inc., 18 F.4th 214, 241 (7th Cir. 2021) (cleaned up). Deliberate indifference requires more than negligence or even objective recklessness. Id. Rather, Mr. Combs "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016). "Of course, medical professionals rarely admit that they deliberately opted against the best course of treatment. So in many cases, deliberate indifference must be inferred from the propriety of their actions." Dean, 18 F.4th at 241 (internal citations omitted).

Mr. Combs alleges that Officer Elis ignored his request for medical treatment and so his care was delayed. The Seventh Circuit has held that deliberate indifference occurs when the defendant effects "an inexplicable delay in treatment which serves no penological interest." Petties, 94 F.3d at 730. Defendants argue that "staff contacted medical at 3:40 pm after [Officer

Elis] was informed that [Mr. Combs] was alleging, he had passed out." [Filing No. 41 at 12.] But the timeline, taken in the light most favorable to Mr. Combs, indicates that medical staff was called before Mr. Combs passed out but after he had complained of feeling dizzy to Officer Elis, that he passed out at 4:00 p.m., that Officer Elis did not see him and discover that he had passed out until 5:19 p.m., that Officer Elis did not get medical attention for Mr. Combs, that another Correctional Officer requested medical attention after seeing him at 6:27 p.m., and that he was seen by a medical staff member at 8:48 p.m. and brought to the medical office at 9:40 p.m. where his head was bandaged.[2]

"A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (quotation and citation omitted). Whether a delay in treatment is tolerable "depends on the seriousness of the condition and the ease of providing treatment." *Id.* (quotation and citation omitted). In order to succeed on an Eighth Amendment deliberate indifference claim related to a delay in medical treatment, Mr. Combs must "provide independent evidence that the delay exacerbated the injury or unnecessarily prolonged pain," which may include evidence that "the patient repeatedly complained of enduring pain with no modifications in care." *Petties*, 836 F.3d at 730-31; *see also Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir. 2007).

Mr. Combs' deliberate indifference claim against Officer Elis appears to be limited to her failure to summon medical help after she learned Mr. Combs had passed out at 5:19 p.m. on August

---

[2] The Grievance Specialist's response to Grievance #23-159295 states that the cameras indicate that medical staff checked Mr. Combs at 8:31 p.m. and provided treatment at 9:24 p.m. [Filing No. 40-3 at 9.] But the Court views the evidence in the light most favorable to Mr. Combs at the summary judgment stage and, accordingly, uses the later timeframes.

10, 2023, rather than any failure to summon medical help after he complained of being dizzy but before he passed out.  Indeed, to the extent his claim is based on the latter, it fails because medical staff was contacted at 3:40 p.m.

As for the delay after Officer Elis learned that Mr. Combs had passed out, at most, Officer Elis's failure to immediately request medical treatment for Mr. Combs when she learned he had passed out at 5:19 p.m. resulted in approximately a 3 ½ hour delay until Mr. Combs was seen by medical staff, which took place at 8:48 p.m. (after another Correctional Officer learned at 6:24 p.m. that he had passed out and summoned medical staff).  Mr. Combs has not presented any evidence that Officer Elis was aware of him being in significant pain during that 3 ½ hour timeframe or that the delay in providing treatment exacerbated his injury.  Further, it is not clear that medical staff would have responded significantly sooner if Officer Elis had summoned them immediately at 5:19 p.m., given evidence that "[m]edical responds to needs based on the severity of the need," and that "[m]edical does not have to respond immediately unless called for by staff as a signal 3000."  [Filing No. 40-3 at 1.]  And, most significantly, it is undisputed that when Mr. Combs fainted he sustained a cut that only required a bandage, and not stitches.  [Filing No. 40-1 at 23-24.]  While Officer Elis's failure to immediately summon medical staff was potentially negligent or even reckless, no reasonable jury could conclude based on the evidence taken in the light most favorable to Mr. Combs that Officer Elis's failure to request medical treatment for Mr. Combs' superficial cut, which led to a 3 ½ hour delay in medical staff providing a bandage, constituted deliberate indifference to a serious medical need and a violation of his Eighth Amendment rights.  Accordingly, Officer Elis is entitled to qualified immunity on Mr. Combs' claim against her.

The Court **GRANTS** Defendants' Motion for Summary Judgment as to Mr. Combs' Eighth Amendment medical deliberate indifference claim against Officer Elis. [Filing No. 39.]

## IV.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment. [39.] Final judgment shall issue accordingly.

Date: 7/8/2025

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

**Distribution to:**

Danny Tyler Combs
#229913
Pendleton Correctional Facility
Electronic Service Participant – Court Only